### In re Thomas J. LEE and Katherine Lee, Debtors.

### Bankruptcy No. 96 B 50680.

United States Bankruptcy Court,
N.D. Illinois,
Western Division.

June 3, 1997.

James Bouril and Associates, Lombard, IL, for debtors.

Stephen P. Spera, Lombard, IL, for James Bouril and Associates.

Lydia S. Meyer, Loves Park, IL, Chapter 13 Trustee.

### MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on the Chapter 13 Fact Form and Fee Application ("Fee Application") of James Bouril and Associates, attorneys for the Debtors, Thomas J. and Katherine Lee. Attorney Stephen P. Spera, appearing on behalf of James Bouril and Associates, and Lydia S. Meyer, the Chapter 13 Trustee, were present for the hearing.

    \*    \*    \*    \*    \*    \*

Oh, East is East, and West is West, and never the twain shall meet. Rudyard Kipling, *The Ballad of East and West,* THE OXFORD DICTIONARY OF QUOTATIONS, 294 (2nd ed. rev.1966).

### BACKGROUND

The Debtors filed for relief under Chapter 13 on March 21, 1996. The Debtors' bankruptcy filing came on the eve of an impending foreclosure. Based on a review of the bankruptcy clerk's docket and the Fee Application, Debtors' counsel provided services including, but not limited to:

1) Filing amendments to Schedule F;

2) Addressing three objections to Confirmation;

3) Addressing an Adversary Complaint which resulted in an Agreed Order (part of which contained a withdrawal of an Objection to Confirmation);

4) Addressing a Motion to Assume a Lease. By Agreed Order the lease was assumed and the corresponding Objection to Confirmation was withdrawn; and

5) Filing a claim on behalf of a mortgage holder.

Debtors' counsel explained to the Court that his law firm charges a flat fee of $1,800.00 in Chapter 13 cases if a pending foreclosure exists. The total request in the Fee Application is $4,142.50, of which $2,342.50, or 13.1 hours[1] is for services not included in the flat fee.

The Debtors' Chapter 13 plan was confirmed on March 14, 1997.

Debtors' counsel indicated that he received $1,800.00 at the beginning of the case and it is being held pending the outcome of this hearing.

The Chapter 13 Trustee stated that the Debtors' plan is a base plan, so all creditors must be paid as provided in the plan before any additional attorney fees are paid.

### WESTERN DIVISION STANDING ORDER # 5

Western Division Standing Order # 5 provides:

The attorney for a Chapter 13 Debtor or Joint Debtors is allowed a maximum fee of $800.00 without further Court approval, but subject to objection by a party in interest.

The $800.00 fee contemplates all of the ordinary services to be provided, including representation of the Debtor in Objections to Confirmation, uncomplicated Complaints to Avoid Liens, Trustee's Motions to Dismiss, and other routine motion call matters.

---

1. The Fee Application reveals that the 13.1 hours comprises the following fees:
   a) 6.3 hours billed at the attorney office hourly rates of $175.00 = $1,102.50
   b) 4.5 hours billed at attorney trial hourly rates of $250.00 = $1,125.00
   c) 2.3 hours billed at paralegal rates of $50.00 = $115.00.

Fees in excess of $800.00 require Court approval after notice and hearing.

Note that the Standing Order does not set a cap. Rather it provides for a maximum amount allowable without further court approval.[2] The $800.00 fee has been in effect since January 20, 1993, and is just about due for a modest revision upward.

### FEES UNDER SECTION 330

Here, Debtors' counsel has sought Court approval for fees of $4,142.50. Thus, the Court must examine the Fee Application in light of the mandate set forth in Sections 330(a) and the applicable case law.

Prior to the Bankruptcy Reform Act of 1994, attorney fees for debtor's counsel in Chapter 13 cases were awarded pursuant to Section 330(a). *In re Harshbarger,* 205 B.R. 109, 111–12 (Bankr.S.D.Ohio 1996). The Bankruptcy Reform Act of 1994 removed reference to payment of compensation to debtor's counsel in Section 330(a). *Id.; In re Friedland,* 182 B.R. 576, 578 (Bankr.D.Colo. 1995).

Section 330(a)(4)(B), however, states:

In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B).

A review of the plain language reveals that the focus is on the "benefit and necessity of such services to the debtor." One of the leading treatises describes the enactment of this provision:

This section was undoubtedly enacted in recognition of the fact that in chapter 13 cases ... the debtor is, in a sense, the principal asset of the estate. Plans in such cases are typically funded by the debtor's income, which is property of the estate; the individual debtor is the going concern.

Thus, services that benefit the debtor in connection with the case are services that facilitate the successful completion of the debtor's plan.

King et al., COLLIER ON BANKRUPTCY, ¶ 330.04[1][v] (15th ed. rev.1996).

The plain language of Section 330(a)(4)(B) also permits a review of the various factors set forth in Section 330. Section 330(a)(3) provides the list of factors for the court to review in assessing whether the amount of compensation sought is reasonable. 11 U.S.C. § 330(a)(3); *see also In re Thorn,* 192 B.R. 52, 55 (Bankr.N.D.N.Y.1995). The factors include:

(A) the time spent of such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of the case;

(D) whether the services were performed within a reasonable amount of time; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in nonbankruptcy cases.

11 U.S.C. § 330(a)(3).

The burden of proving entitlement to the fees falls on the applicant. *Thorn,* 192 B.R. at 55 (citations omitted); *In re Price,* 143 B.R. 190, 192 (Bankr.N.D.Ill.1992) *aff'd,* 176 B.R. 807, *aff'd and remanded,* 42 F.3d 1068 (7th Cir.1994); *In re Pettibone Corp.,* 74 B.R. 293, 299 (Bankr.N.D.Ill.1987); *In re Lindberg Prods. Inc.,* 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). Moreover, the lack of an objection to a fee request does not restrict the Court from limiting the fees sought. The Court has a duty to independently examine the reasonableness of the fees. *Price,* 143 B.R. at 192 (citations omitted).

### FEES OF EASTERN DIVISION LAWYERS IN WESTERN DIVISION CASES

One of the recurring challenges in the administration of bankruptcy cases in the

---

**2.** This approach to Chapter 13 fees has been utilized in the Western Division for more than a quarter of a century, has worked well, has promoted efficiency in the administration of Chapter

13 cases, and has been adapted in various ways for use in bankruptcy courts throughout the country.

Western Division is the determination of fair and appropriate fees for Eastern Division lawyers. The problem often arises in fee requests of counsel representing debtors in Chapter 7, 11, and 13, but also may arise in fee requests of counsel for secured creditors pursuant to Section 506(b).

Typically, the fee requests of Eastern Division counsel approach or exceed double the fee requests of Western Division counsel for comparable services. This is, to say the least, somewhat demoralizing to Western Division lawyers, but that is beside the point.

The problem has many causes, some obvious, others more subtle. Perhaps foremost among the obvious causes is the fact that Eastern Division hourly rates are significantly higher than Western Division hourly rates. This is true even though a pound of Frango mints costs the same at Marshall Fields in the loop as it does at Marshall Fields in Cherry Vale.

A second cause is the accursed, but understandable need for Eastern Division lawyers to charge for time spent driving to and from the federal building in Rockford. For one Eastern Division lawyer (and sometimes two are sent) four hours windshield time may cost in excess of $1,000.00. That's quite a bundle in a Chapter 13 case.

This Court recognizes authority for allowing sophisticated urban lawyers their hometown legal fees when they provide services in less sophisticated rural areas. In *In re Atlas Automation, Inc.,* 27 B.R. 820, (Bankr. E.D.Mich.1983), Bankruptcy Judge Bernstein suggested local counsel from Flint, Michigan, could learn much by "tilting in the lists" with the insolvency lawyers from Detroit. The elitist view of Judge Bernstein is not universally held. In *Butler, Snow, O'Mara, Stevens & Cannada v. Henderson (In re White),* 171 B.R. 554 (S.D.Miss.1994), District Judge Little of the Southern District of Mississippi denied, in part, the fees requested by a prominent Chicago law firm, restricting the reasonable hourly rates to those charged in the magnolia state.

The Court also recognizes authority for allowing the full hourly rate for windshield time. A case so holding, hot off the press, is *In re Raytech Corp.,* 206 B.R. 646 (Bankr. D.Conn.1997).

It is well established that a client should be permitted to retain counsel of his or her choice. In that regard, the Court has no quarrel with the market approach to fee resolution. But the market approach is only viable if the client knows what the market has to offer. Did the Debtors here know that the charge for legal services by Eastern Division counsel would be more than four or five times that of competent Western Division Chapter 13 counsel?

Does an attorney practicing in the Eastern Division have an ethical duty to advise a client of the enormous discrepancy in fees charged by Eastern Division versus Western Division counsel? Probably not. Is it a matter of sound professional practice to do so? One would hope so, if the market approach is to work.

*DISCUSSION*

Here we have a routine, ordinary, typical nonbusiness Chapter 13 case. There were no unusual or unanticipated time-demanding legal challenges. By the fee standards of Western Division lawyers, this is an $800.00 case. Nevertheless Debtors' counsel seeks fees of $4,142.50.

To accumulate $4,142.50 in legal fees, we start with the base fee of $1,800.00, an amount Debtors' counsel assures the Court is allowed by the Eastern Division Bankruptcy Judges in routine cases.

■ The base fee of $1,800.00 is established in cases where there is a foreclosure pending. For purposes of fee allowance, the distinction between a case in which a foreclosure is pending and a case in which a foreclosure is not pending, has never been made by this Court, nor to my knowledge by Western Division lawyers. The question is not whether a foreclosure is pending, but whether a pending foreclosure creates additional demands on Debtors' counsel over and above the services contemplated by Standing Order # 5.

The Court notes that the services performed by Debtors' counsel benefitted the Debtors and their estate. *See, e.g., In re*

*Rothman,* 206 B.R. 99, 110 (Bankr.E.D.Pa. 1997) (amendment to Section 330, adding Section 330(a)(4)(B), broadened the beneficiaries of legal services compensable from the debtor's estate to the debtor as well, but the compensable services must benefit either the debtor or the estate).

The Standing Order sets forth the type of services this Court expects attorneys to provide to their clients for the sum of $800.00. Included in that list is representation of debtors in responding to Objections to Confirmation. Of course, if the Objection to Confirmation goes to trial, as rarely occurs, and did not here, additional compensation is justified.

In the final analysis, after a careful review of the court file and the time sheets, the Court finds several factors which justify a fee in excess of $800.00. There were three Objections to Confirmation, a Motion to Assume Lease, and an Adversary Proceeding. And yes, there were those trips to Rockford. Finally there were all those miscellaneous nagging questions counsel had to respond to, as so thoroughly described in the time sheets.

So perhaps this is, after all, despite the overwhelmingly routine nature of it, a case in which a fee allowance beyond $800.00 is appropriate. Therefore, for the additional services performed beyond those contemplated in standing Order # 5, a generous $1,500.00 is allowed, bringing the total fee allowance to $2,300.00. That is less than requested by counsel, but enough to make Western Division Chapter 13 lawyers drool, so it must be just about right.