In re DAY, et al., Debtors.

and

In re AGNEW, Debtor.

Peter Francis GERACI, Appellant,

v.

Edward B. HOPPER II, United States Trustee, Appellee.

Nos. 97–3116, 97–3176.

United States District Court, C.D. Illinois, Springfield Division.

Sept. 10, 1997.

See also: 208 B.R. 907.

---

## OPINION

RICHARD MILLS, District Judge.

"The matter of fees is important, far beyond the mere question of bread and butter involved. Properly attended to, fuller justice is done to both lawyer and client. An exorbitant fee should never be claimed. As a general rule never take your whole fee in advance, nor any more than a small retainer. When fully paid beforehand, you are more than a common mortal if you can feel the same interest in the case, as if something was still in prospect for you, as well as for your client. And when you lack interest in the case the job will very likely lack skill and diligence in the performance. Settle the amount of fee and take a note in advance. Then you will feel that you are working for something, and you are sure to do your work faithfully and well."

Abraham Lincoln [1]

## I. BACKGROUND

Our Appellant—Peter Francis Geraci—is an attorney who specializes in consumer bankruptcy law.

In fact, in his briefs to the Court, Mr. Geraci frequently informs us that his firm is the largest practitioner of consumer bankruptcy law in the United States and, therefore, in the world.

Mr. Geraci's main office is located in Chicago, Illinois, but he is aggressively expanding his practice into the Chicago suburbs, Wisconsin, Indiana, and (most importantly for our purposes) the Central District of Illinois.

As well as maintaining one of the largest consumer bankruptcy practices, Mr. Geraci is also, evidently, one of the most expensive bankruptcy attorneys available.

Therein lies the problem.

Mr. Geraci's fees were so high in fifteen separate bankruptcy cases filed in the Springfield Division of the Central District of Illinois that the United States Trustee in Bankruptcy filed a motion in each case asking the bankruptcy court to require Mr. Geraci to show cause why the fees he charged were reasonable. In these fifteen bankruptcy cases, Mr. Geraci's fees for a simple Chapter 7 bankruptcy ranged from $850.00 to $1,195.00.

The bankruptcy court consolidated the U.S. Trustee's motions and conducted a hearing. At that hearing, five attorneys who practice bankruptcy law in the Springfield Division of the Central District of Illinois testified as to the rates typically charged by the local bar for Chapter 7 bankruptcy cases. All five attorneys testified that Mr. Geraci's fees in the fifteen cases were unreasonably high and excessive.

Mr. Geraci testified on his own behalf and discounted the attorneys' testimony as being of "little evidentiary value." Mr. Geraci argued that attorney's fees for bankruptcy cases in Springfield are "artificially depressed" and that the market is a better determiner of his fees than the bankruptcy court. He further asserted that the bankruptcy court should not reduce his fees unless there was evidence of overreaching, of which there was none. Because his fees were reached after arms-length negotiations with his clients, Mr. Geraci stated that the bankruptcy court should not reduce his fees.

At the conclusion of the hearing, the bankruptcy court found that Mr. Geraci had failed to produce any evidence to substantiate his excessive fees in any of the fifteen cases. Accordingly, the bankruptcy court ordered Mr. Geraci to disgorge all fees in excess of $575.00, which the five attorneys testified was the highest fee that any of them would

---

**1.** *Notes for a Law Lecture, in* COLLECTED WORKS OF ABRAHAM LINCOLN 2:82 (Roy P. Basler ed., 1953).

have charged in any of the fifteen cases. The bankruptcy court's orders in those fifteen cases form the basis of case number 97–3116.

Subsequent to the bankruptcy court's orders, the U.S. Trustee filed similar motions to show cause against Mr. Geraci in 73 other bankruptcy cases in the Springfield Division of the Central District of Illinois. This time, the bankruptcy court did not conduct a hearing; rather, that court ordered Mr. Geraci to file a fee application and an affidavit in each individual case. The bankruptcy court stated that an application and an affidavit were necessary in order to determine the reasonableness of Mr. Geraci's fees in those cases.

But, instead of filing an application and an affidavit in each case as instructed, Mr. Geraci filed a brief arguing that he is not required to keep itemized time records. Because Mr. Geraci failed to provide the bankruptcy court with the information it needed to make its determination as to the reasonableness of his fees, the bankruptcy court ordered Mr. Geraci to disgorge all fees in excess of $600.00 in each of the 73 cases. The bankruptcy court's orders in those 73 cases form the basis of case number 97–3176.[2]

Mr. Geraci now asks this Court to reverse the bankruptcy court's rulings regarding his fees.

## II. STANDARD OF REVIEW

Pursuant to Bankruptcy Rule 8013 "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr.P. 8013; see In re A–1 Paving and Contracting, Inc., 116 F.3d 242, 243 (7th Cir.1997); see also In re Marrs–Winn Co., Inc., 103 F.3d 584, 589 (7th Cir.1996). The bankruptcy court's legal conclusions, however, are subject to de novo review. Id.

Furthermore, the bankruptcy court has wide discretion in making fee determinations. In re Wildman, 72 B.R. 700, 705 (Bankr.N.D.Ill.1987). "The standard of review on appeal of a fee award by a bankruptcy court is whether the bankruptcy judge has abused discretion." Id., citing In re U.S. Golf Corp., 639 F.2d 1197 (5th Cir.1981).

Finally, pursuant to Bankruptcy Rule 8012, the Court concludes that oral argument would not be helpful. Specifically, "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Fed. R. Bankr.P. 8012.

## III. ANALYSIS

Appellant Geraci begins his briefs by misidentifying the division of the Central District of Illinois which maintains jurisdiction over these appeals. Appellant asserts that the "United States District Court for the Central District of Illinois, Danville Division, exercises appellate jurisdiction over this appeal." This Court, as well as the bankruptcy court which issued the orders from which Appellant appeals, sit in the **Springfield Division.** Appellant's briefs missed the mark from the start, and they never came close thereafter.[3]

### A. Equal Protection

Appellant Geraci tenders several arguments on appeal that range from incorrect to ludicrous. Appellant's most frivolous argument is that the U.S. Trustee's actions and the bankruptcy court's orders violate the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. He argues that the U.S. Trustee and the bankruptcy court, with a discriminatory purpose, singled him out from the rest of the bankruptcy practitioners without any rational basis. Appellant asserts that no other bankruptcy attorney's fees have been subjected to the scrutiny and reduction which his fees have. Therefore, Appellant Geraci states that the U.S. Trustee and the bankruptcy

---

**2.** This Court consolidated the 73 cases into case number 97–3176 for briefing purposes.

**3.** To the Court's bewilderment, although Appellee's brief in case number 97–3116 notes that

Appellant stated the wrong division in his brief, Appellant's subsequent brief in case number 97–3176 again states that the Danville Division has jurisdiction over this appeal.

court have violated his equal protection rights.

■ As a technical matter, if the federal government violates the equal protection clause, the action would contravene the due process clause of the Fifth Amendment—not the Equal Protection Clause of the Fourteenth Amendment. However, because the standards are the same under both clauses,[4] the Court will address the merits (or the lack thereof) of Appellant's claim.

■ Appellant admits that he is not a member of a suspect class nor does he assert a violation of a fundamental right. Accordingly, " '[w]here neither an invidious classification nor a deprivation of a fundamental interest is alleged, the equal protection clause requires only that the classification bear some rational relationship to legitimate governmental ends.' " *Hager v. City of West Peoria,* 84 F.3d 865, 872 (7th Cir.1996), quoting *Brown v. City of Lake Geneva,* 919 F.2d 1299, 1302 (7th Cir.1990); *see City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 446, 105 S.Ct. 3249, 3257–58, 87 L.Ed.2d 313 (1985). Here, the Court cannot think of a more rational relationship between the U.S. Trustee's and bankruptcy court's actions and Appellant's "classification" than the requirement that the bankruptcy court follow and enforce 11 U.S.C. § 329(b).[5]

■ Furthermore, the Equal Protection Clause protects persons equally situated from unequal treatment by the government. *Indiana State Teachers Ass'n v. Board Of Sch. Commr's of the City of Indianapolis,* 101 F.3d 1179, 1182 (7th Cir.1996). In the instant case, there has been no unequal treatment of Appellant. The bankruptcy court did not limit its orders to Appellant only; rather, any attorney whose fees exceed $600.00 in a simple Chapter 7 bankruptcy must petition the bankruptcy court to receive the excess amount.[6] Moreover, the only dis-

criminatory purpose alleged by Appellant is his wild and paranoid accusation that the bankruptcy court is conspiring to keep attorney's fees deflated in the district and to keep him from practicing in the Central District of Illinois.

The U.S. Trustee and the bankruptcy court had a legitimate purpose for their actions, *i.e.,* to apply 11 U.S.C. § 329(b), and they did so without any discriminatory purpose. As the United States Court of Appeals for the Seventh Circuit has stated, "[t]he concept of equal protection is trivialized when it is used to subject every decision made by state or local government to constitutional review by federal courts." *Id.* at 1181.

The Court is confident that even a first year law student would conclude that the U.S. Trustee's actions and the bankruptcy court's orders did not violate the Equal Protection Clause.

**B.** *Reasonableness of Fees*

■ Although Appellant Geraci makes his remaining arguments in various forms, Appellant basically argues that the "market" and not a bankruptcy judge should set his fees. Appellant asserts that although 11 U.S.C. § 329(b) grants a bankruptcy court the authority to review and, if necessary, to reduce an attorney's fees, the statute has little application here. Appellant states that the reduction of his fees was arbitrary and based upon anti-competitive purposes. Therefore, Appellant argues that the bankruptcy court's decisions should be reversed.

Title 11 U.S.C. § 329(b) states:

If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

---

4. *See Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *see also Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975).

5. Appellant does not challenge the constitutionality of 11 U.S.C. § 329(b) and, in fact, recognizes the bankruptcy court's authority under the statute to review his fees.

6. For example, this Court presently has pending three cases in which an attorney is appealing the bankruptcy court's denial of her request to receive fees in excess of $800.00 in a Chapter 13 bankruptcy case. *See* U.S. District Court for the Central District of Illinois, Springfield Division, case numbers 97–3311, 97–3312, and 97–3313.

(1) the estate, if the property transferred—

 (A) would have been property of the estate; or

 (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

Accordingly, it is clear (as even Appellant admits) that the bankruptcy court had the authority to examine the reasonable value of Appellant's fees. In fact, the bankruptcy court had the duty to do so *sua sponte*. Fed. R. Bankr.P.2017; *see In re Wildman*, 72 B.R. at 705; *see also Cohen & Thiros v. Keen Enterprises, Inc.*, 44 B.R. 570, 574 (N.D.Ind. 1984).

 A bankruptcy court's inquiry into the reasonableness of an attorney's fees is a factual question to be determined on a case-by-case basis. *In re Olen*, 15 B.R. 750, 752 (Bankr.E.D.Mich.1981). In considering the reasonableness of an attorney's fees, some courts have looked to the following factors: " 'the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under (title 11 of the United States Code).' " *In re Swartout*, 20 B.R. 102, 105 (Bankr.S.D.Ohio 1982), quoting 11 U.S.C. § 330(a)(1). Other courts have looked to: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974).

Using either set of factors, Appellant loses.

 In the cases consolidated into case number 97–3116, the bankruptcy court held a hearing in order to establish the reasonableness of Appellant's fees. In the cases consolidated into case number 97–3176, the bankruptcy court ordered Appellant to file an application and an affidavit in order to establish the reasonableness of his fees. The bankruptcy court reviewed the testimony at the hearing and the filings of Appellant and then issued a thoughtful opinion employing the factors set forth above.

This Court can find no abuse of discretion in the bankruptcy court's rulings.

There is little doubt that the bankruptcy cases at issue were relatively simple Chapter 7 bankruptcy cases which did not present difficult or novel questions. Each of the five attorneys who testified at the hearing stated that there was nothing unusual, novel, or complex about the cases, and if presented with those cases, he would have accepted them.

As for the time and labor required on each case, the bankruptcy court could only speculate because Appellant refused to provide the bankruptcy court with the hours expended per case and/or the name of the attorney who worked on the case. Indeed, Appellant did not provide any billing records because he believes hourly billing to be a Marxist tenet.[7] Thus, there is little room for Appellant to argue that the bankruptcy court abused its discretion on this point.

Furthermore, the bankruptcy court found that Appellant Geraci's work is not on par with that of other bankruptcy practitioners, that his motion practice leaves much to be desired, and that his abilities as a trial lawyer are substandard. Thus, the bankruptcy court concluded that Appellant's service to his clients is poor. Based upon our review of the record of the proceedings in the bank-

---

**7.** The Court is again puzzled by Appellant's position because an attorney's hourly billing rate is a central feature of the lodestar method of calculating attorney's fees which has repeatedly been approved by the United States Supreme Court and the Seventh Circuit. *E.g. Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Simpson v. Sheahan*, 104 F.3d 998, 1001 (7th Cir.1997); *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir.1996).

ruptcy court and the quality of Appellant's briefs to this Court, the Court agrees with the bankruptcy court's assessment of Appellant's skills. Rather than establishing how the bankruptcy court abused its discretion when it reviewed his fees, Appellant simply repeats here the argument which he made to the bankruptcy court, *i.e.*, that the market should decide his fees and not the bankruptcy court. Appellant asserts that he—as the largest consumer bankruptcy attorney in the world—knows better what the market will bear than the bankruptcy court.

However, as evidenced by Appellant's ineptness before the bankruptcy court and this Court, bigger is not always better.

■ While the market plays an important role in our economy and in establishing attorney's fees, Appellant neglects the dictates of 11 U.S.C. § 329(b) and § 330. "The debtor's attorney is entitled to compensation for the reasonable value of his services, but it is the Court that determines what is the reasonable value of the attorney's service, not the attorney or the debtor. Payment of compensation is, in all cases, subject to court approval." *Bob Grissett Golf Shoppes, Inc.*, 50 B.R. 598, 608–609 (Bankr.E.D.Va.1985); 11 U.S.C. § 329; 11 U.S.C. § 330.

Appellant Geraci also argues that the bankruptcy court and the attorneys who practice in this district are conspiring against him to keep him from practicing here. Moreover, Appellant claims that when the bankruptcy court ordered him to disgorge part of his fees, the bankruptcy court was motivated by anti-competitive purposes. The Court need not discuss these claims other than to note that they are simply preposterous.

■ Finally, contrary to Appellant's assertions, the bankruptcy court did not set a cap or a limit on the amount of attorney's fees which can be charged in a Chapter 7 bankruptcy case in the Central District of Illinois, Springfield Division. Rather, the bankruptcy court merely set a point at which fees would be reviewed by the bankruptcy court. If an attorney wishes to charge a debtor an amount in excess of that benchmark, the attorney must show the bankrupt-

cy court why he and his work are worth the money. If he is able to establish this, he may collect the excess amount. Appellant Geraci has cited no authority which shows that this practice is contrary to law. In fact,

> [a] review of attorney's compensation is most appropriate in a nonbusiness or a consumer case under the Code. Local rules may place a presumptive limit on the amount of fees to be paid to the debtor's attorney for filing a consumer chapter 7 and chapter 13 case. By setting a standard maximum fee, courts seek to save time both for themselves and for debtors' attorneys in cases that are routine and quite similar to each other. Often, based on the [*sic*] their knowledge of the amount of time and effort necessary for a routine case, courts allow debtors' attorneys' fees within the standard maximum without requiring a detailed accounting on time spent.

(footnote omitted). Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 329.04[1][a] (15th ed.1996).

■ There was nothing at all arbitrary about the amount which the bankruptcy court set. At the hearing, the five attorneys testified that $575.00 was the highest amount which any of them would have charged for any of the fifteen cases at issue in case number 97–3116. Thus, the bankruptcy court set Appellant's attorney's fees at $575.00 in those cases. As for the cases consolidated into case number 97–3176, the bankruptcy court set the point at which it would begin examining fees at $600.00. The bankruptcy court arrived at that figure based upon its familiarity with the time and skills necessary for handling a Chapter 7 bankruptcy case, the typical obligations associated with a Chapter 7 bankruptcy case, and the amounts charged by other consumer bankruptcy attorneys in the Central District of Illinois, Springfield Division, for a Chapter 7 bankruptcy case.

## IV. CONCLUSION

Appellant Geraci's basic argument is that his fees should be based upon the market (*i.e.*, what a willing buyer will pay to a willing seller of an attorney's services), whatever

that amount may be. ·And, this argument is directly athwart the statute. Title 11 ·U.S.C. § 329(b) *mandates* that a bankruptcy court review the reasonableness of an attorney's fees. In making fee determinations, a bankruptcy court has wide discretion. This Court's duty on appeal is simply to determine whether the bankruptcy court has abused its discretion. Accordingly, the Court finds that the bankruptcy court did not abuse its discretion in ordering Appellant Geraci to disgorge part of his fees under the facts and circumstances of these cases.

*Ergo,* the Judgments of the United States Bankruptcy Court for the Central· District of Illinois are AFFIRMED.

CASES CLOSED.